**STATE of Tennessee, Appellee,**

v.

**Harold Wayne MAYS and Kenneth Mays, Appellants.**

Court of Criminal Appeals of Tennessee, at Knoxville.

July 26, 1984.

Ray Cate (at trial only), Edward Nethery (on appeal only), Knoxville, for appellants.

William M. Leech, Jr., Atty. Gen., Wayne E. Uhl, Asst. Atty. Gen., Nashville, Charles Hawk, Dist. Atty. Gen., Roger Delp, Asst. Dist. Atty. Gen., Kingston, for appellee.

## OPINION

SCOTT, Judge.

The appellants were convicted of burglary in the third degree, safecracking, and were sentenced to not less than four nor more than twenty-one years in the state penitentiary. They were also convicted of grand larceny and received sentences of not less than four nor more than ten years in the state penitentiary. The trial judge ordered the sentences to be served concurrently. They have presented two issues on appeal. First, they contend that the proof is insufficient to prove beyond a reasonable doubt that they made any attempt to open the safe "in the premises".

In the early morning hours of February 22, 1982, the appellants, Harold Wayne Mays and Kenneth Mays, along with Dickie Beeler and Allen Duke Shipp, broke into a convenience store operated by the Bluff Road Grocery Company, Inc. in the Midtown area of Roane County. They believed that there was a large sum of money in the safe. Upon arrival at the store, Mr. Shipp deactivated the burglar alarm and the windows of the store were broken out with rocks. When they found that the safe could not be moved, Wayne Mays backed the truck through the window. The truck hit the safe and broke it loose from its moorings in the floor. The four men then loaded the safe into the bed of the truck.

They also opened the cash register inside the store and set off a silent alarm in the cash drawer. The alarm automatically dialed four phone numbers, including that of the Roane County Sheriff's Department. Officers converged on the scene, with the first arriving approximately three minutes after receiving the call. The truck was still backed up to the front of the store. Two men were seated in the truck and two others were outside. One man jumped into the truck and drove it away. The other man outside the truck, identified as Dickie Beeler, was left at the scene.

A chase ensued and as the driver of the truck attempted an evasive maneuver, he wrecked in the parking lot of a restaurant. Two of the men jumped out of the truck and fled into a thicket. Mr. Shipp was left inside the truck and was arrested immediately. He identified his companions as the appellants and they were subsequently arrested later that morning.

The appellants contend that their intent was to load the safe onto the truck to take it elsewhere and to then open it. They contend that they had no intention of opening the safe while "in the premises". It is their position that the safecracking must occur on or about the premises in order to constitute an offense under our statute.

TCA § 39–3–404(b)(1) provides as follows:

Any person who, with intent to commit crime, breaks and enters, either by day or by night, any building, whether inhabited or not, and opens or attempts to open any vault, safe, or other secure place by any means, shall be punished by imprisonment for a term of not less than three (3) nor more than twenty-one (21) years upon conviction for a first offense, and not less than five (5) years nor more than twenty-one (21) years upon conviction for a second or subsequent offense.

■ The statute proscribes several acts, (1) breaking and (2) entering of the building and the (3) opening or (4) attempting to open a vault, safe or other secure place. The statute does not require that the opening occur on the premises. Of course, the vault or safe may be so large that it would be humanly impossible to move it at all, as in the case of a bank vault.

In *State v. Walker*, 6 N.C.App. 447, 170 S.E.2d 627, 629 (1969), a conviction for safecracking was affirmed where the safe was stolen and later found opened some thirteen miles from the scene of the theft. The North Carolina statute, as it then existed, was more narrow than our statute. For example, it did not embrace unlawful entry by manipulation of the combination. *State v. Thomas*, 292 N.C. 251, 232 S.E.2d 411, 414 (1977). The statute has been amended to provide that any opening or attempt to open a safe constitutes safecracking, as does unlawful removal of a safe from its premises "for the purposes of stealing, tampering with, or ascertaining its contents". N.C.Gen.Stat. § 14–89.1(a) and (b).

■ Our legislature specifically declared "attempts to open" a vault or safe to be unlawful. TCA § 39–3–404(b)(1). An attempt to commit a crime consists of three elements: (1) an intent to commit a specific crime, (2) an overt act toward the commission of the crime, and (3) the failure to consummate the crime. *Bandy v. State*, 575 S.W.2d 278, 281 (Tenn.1979).

■ In this case the proof showed that the appellants intended to steal the contents of the safe. The opening of the safe was obviously the next logical step in the process of getting the contents. There was an overt act toward that end in the form of physical violence to the safe itself when it was knocked loose from its mooring and loaded onto the truck. The fact that it was moved to the bed of the truck for transportation elsewhere did not diminish from the fact that an opening was intended. The crime was not consummated because law enforcement officers interrupted. Under these circumstances there was an attempt to open the safe, because there was an overt act in carrying out the criminal intent. This issue has no merit.

In the second issue the appellants contend that the trial judge erred when he answered a question propounded by the jury during deliberations to the effect that the appellants would be eligible for parole after serving a portion of the minimum sentence.

Sometime after the jury retired, (the record does not reflect when) they sent the judge a note with two questions written thereon. In his own handwriting the judge answered the questions and apparently passed the note back into the jury room. Only the answer to the first question is the subject of controversy.

The question was exactly as follows:

1. In the case of an indeterminate sentence, can the judge set a sentence in between our minimum and maximum sentence? If not, how is it determined whether they stay the minimum or maximum sentence?

The answer submitted by the judge was as follows:

1. Where the jury sets the sentence that is the sentence! How long they stay is determined by the parole board. They are eligible for parole after serving a portion of the minimum sentence but neither the jury nor the judge has any control once that—

Relying on *Farris v. State*, 535 S.W.2d 608, 614 (Tenn.1976), the appellants contend that this was error which requires that this Court reduce the sentences for each offense to the statutory minimum, with leave for the state to demand a remand to the trial court for a sentencing hearing. The state concedes that the trial judge's answer to the jury's question was error, but contends that it was harmless.

In *Farris*, our Supreme Court held that TCA § 40-2707 was unconstitutional. This provision entered our Code as a result of the passage of Chapter 163 of the Public Acts of 1973. The law required trial judges in criminal cases to charge the jury with respect to parole eligibility, powers and duties of the Board of Pardons and Paroles, good behavior allowances and the allowance of honor time. 535 S.W.2d at 609. Our Supreme Court, speaking through Mr. Justice Henry, held that:

> The matter of the future disposition of a convicted defendant is wholly and utterly foreign to his guilt and is not a proper consideration by a jury in determining the length of his sentence. 535 S.W.2d at 614.

■ The answer written by the trial judge should have stopped at the end of the first sentence. The other statements are correct, but they were not proper matters for consideration by the jury in determining the length of the appellants' sentences.

However, the short statement by the trial judge did not affect the verdict. Since these offenses occurred prior to the effective date of the Tennessee Criminal Sentencing Reform Act of 1982, TCA § 40-35-101, et seq., the jury was required to fix the minimum and maximum terms of the appellants' incarceration. The minimum could be increased to as much as six years for each offense. TCA § 40-20-107(a). It is clear that the jury in fixing the minimum at four years in each case was not prejudiced by the erroneous instruction by the trial judge. The error was harmless beyond a reasonable doubt and did not affect the verdict. Rule 52(a), T.R.Cr.P., Rule 36(b), T.R.A.P. This issue has no merit.

■ Trial judges would be well advised to discontinue the practice of communicating with deliberating juries by passing notes. The proper method of fielding questions propounded by the jury during deliberations is to recall the jury, counsel, the defendant(s), and the court reporter back into open court and to take the matter up on the record. ABA Standards Relating to Trial by Jury § 5.3(a), ABA Standards Relating to the Function of the Trial Judge §§ 5.11(b), 5.12(a).

Finding no merit to either of the issues, the judgment is affirmed.

O'BRIEN, J., and RICHARD R. FORD, Special Judge, concur.