STATE of Tennessee, Appellee,

v.

Harvey Lee SMITH, Appellant-Defendant.

Court of Criminal Appeals of Tennessee, at Jackson.

March 30, 1988.

Petition to Appeal Denied by Supreme Court May 31, 1988.

David E. Ferguson and Walker Guinn, Memphis, for appellant-defendant.

W.J. Michael Cody, Atty. Gen., Albert L. Partee, III, Asst. Atty. Gen. Nashville, Hugh W. Stanton, Dist. Atty. Gen., John W. Campbell, Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

DUNCAN, Presiding Judge.

The defendant, Harvey Lee Smith, was convicted of armed robbery and was sentenced to a Range II sentence of thirty-seven (37) years.

In this appeal, the defendant says that the evidence was insufficient to support his conviction, alleges error in the trial court's denial of an electronic recording of his preliminary hearing, and raises certain issues relating to the jury instructions. We find no prejudicial error regarding any of the defendant's claims.

The victim, Eddie Durham, testified that on June 10, 1986, at around 8:30 p.m., he was robbed at gunpoint by the defendant. Durham had just come out of a house at 1854 Bedford Street in Memphis where he had collected rent from a tenant. When Durham came out, he got in his truck, which had been blocked by the defendant's truck. The defendant came up to him and was shouting and cursing. The defendant pointed the gun at Durham and told him to get out of the truck. Durham testified he was in fear of his life. According to Durham, the defendant shouted, "Give me my money," then said, "Give me the money you owe me ... just give me the money that you have in your pocket." Durham took $150.00 to $200.00 out of his pocket

and laid it on the ground. Subsequently, the defendant shouted to someone down the street, and this person came up and picked up the money off the ground. After that, the defendant said he "ought to kill" Durham, but then told Durham to get in his truck and leave.

Durham further testified that the defendant had previously rented an apartment from him. The defendant had moved out over one year prior to this incident. Several months earlier Durham and the defendant had had a discussion about a rental deposit that the defendant had made to Durham. Durham would not return the deposit because of damages to the apartment and because the defendant failed to give a thirty day notice that he was vacating the property.

On cross-examination, Durham denied that at the time of the present incident the defendant mentioned anything about a "rent deposit." When asked if, at the preliminary hearing, he had testified that the defendant had said at the time of the event, "Give me my deposit money," Durham said he could not recall that answer, then denied making that answer, but then conceded it was "possible" he had given that answer.

Another witness for the State, Jacquelyn Owens, who lived near the scene, testified that she saw the defendant pull a gun on Durham on this occasion. The defendant had a towel over the gun, but she could see the barrel of the gun sticking out. Ms. Owens heard the defendant tell Durham "to give him his money." Later, in her rebuttal testimony, Ms. Owens said the defendant's girl friend, Dorothy Lewis, was not in the defendant's truck at the time of the event.

The defendant did not testify, but his girl friend, Dorothy Lewis, did. According to Ms. Lewis, she was in the defendant's truck at the time of the incident. She heard the defendant say to Durham, "Give me my $85.00 deposit." Durham said, "I don't have your money," and then after that the defendant said "Give me my money," Durham gave the defendant "four 20's and a $5." Ms. Lewis said the defendant did not have a gun.

On cross-examination, Ms. Lewis said that the defendant "had his hand up under his shirt." When asked if the money was handed to the defendant or if it went on the ground, Ms. Lewis replied, "it went on the sidewalk," and the defendant picked the money up.

Another defense witness, David Lewis, a brother of Dorothy Lewis, testified he came up to the scene where the defendant and Durham were talking, but he could not hear their conversation. He said the defendant did not have a gun, but that he saw $85.00 on the ground and saw the defendant pick up the money.

■ Quite clearly, the evidence in this case shows that the defendant robbed Durham. The only debatable issue was whether the robbery was accomplished by the use of a deadly weapon. The jury accepted the testimony of Durham and Ms. Owens that a gun was used by the defendant in carrying out this robbery. Thus, the issue was settled by the jury.

■ As we view the evidence, it does not support the defendant's theory that he was merely trying to get back his rent deposit. Moreover, assuming arguendo that Durham owed the defendant some money over the rental transaction, this would merely be a civil obligation to be settled in a civil proceeding. Certainly, a person has no right to rob a person at gunpoint in an attempt to collect money that he may believe is owed to him.

The evidence is more than sufficient to show beyond a reasonable doubt the defendant's guilt of armed robbery. The evidence satisfies the tests of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979); T.R.A.P. 13(e).

Next, the defendant says it was error for the trial court to refuse his request to require the State to produce a tape of his preliminary hearing.

On cross-examination of Durham, defense counsel attempted to impeach him by demonstrating that his trial testimony had been different at the preliminary hearing. This concerned Durham's trial testimony

about whether he had testified at the preliminary hearing that at the time of the event, the defendant had said, "Give me my deposit money."

█ We agree with the defendant that it was error to deny the production of the tape. The State had the tape in its possession, and its production would not have unreasonably delayed the proceedings. Had the tape been produced, this entire issue could have been avoided. Nevertheless, we do not see that the non-production of the tape created prejudicial error.

Prior to the trial, defense counsel had obtained the tape from the State and had made a transcript from it. Defense counsel had this transcript at the trial and read from it during cross-examination of Durham.

The defendant wanted the tape itself produced so that it could be played to the jury. Obviously, the tape itself could not have provided anything more than what was contained in the transcript.

Further, defense counsel's reading from the transcript effectively conveyed to the jury the defendant's contention that Durham had testified differently at the preliminary hearing regarding the matter of which complaint is made. Also, had the defendant desired, he could have introduced the transcript itself to prove the alleged conflicts in the testimony. Although the defendant argues on appeal that the transcript was "double hearsay," the State made no objection to the use of the transcript at the trial.

Also, the impeachment matter under discussion was insignificant. As we have indicated, it makes no difference whether the defendant robbed the victim just "for money" or for the return of a "rent deposit."

From all of the above, we conclude that the error here was harmless. No prejudice resulted to the defendant.

█ In his next issue, the defendant contends that the trial court erred in denying his special requests to charge on the lesser included offenses of larceny from the person, aggravated assault and simple assault.

Under the evidence in this case, the defendant was guilty of either simple robbery or armed robbery or of nothing at all. The trial court adequately and correctly charged the jury on armed robbery and the lesser offense of simple robbery. A trial judge is not required to charge lesser included offenses when the proof shows that the defendant committed the greater offense or no offense at all. *James v. State,* 215 Tenn. 221, 385 S.W.2d 86 (1964).

█ Also, the defendant complains about the denial of three special requests for an instruction on intent to steal, on his belief that he owned the money taken from the victim, and on the question of intent to permanently deprive the owner of the money.

Apparently, these requested instructions were submitted in support of defendant's theory of the case; that is, that all he did was regain his own money from Durham. The evidence did not merit these requested instructions.

Taken in the light most favorable to the defendant, the evidence only established that a dispute existed over an $85.00 rent deposit. In no way can it be said that the money taken from Durham was the $85.00 rent deposit, and even if Durham owed the defendant some money, the law would not authorize the collection of this debt at gunpoint. The trial court's charge that was given correctly explained all of the elements of armed robbery and simple robbery. The trial court correctly denied these special requests.

In his final issue, the defendant contends that during its deliberations the jury made a written request for a definition of the phrase "felonious intent." The trial court responded in writing, as follows:

The phrase "felonious intent" is to be defined by you, members of the jury. The law prohibits me as judge from commenting in any way, shape, form or fashion.

The defendant argues that the trial court should have defined this term, and also complains that these developments occurred outside the presence of defense counsel and the defendant.

First, the trial court had already given the pattern instruction on the offense of robbery, which adequately explains the meaning of felonious intent, and no further amplification was needed.

Second, we point out that the passing of handwritten notes between a judge and the jury, in the absence of counsel and the defendant, has been specifically disapproved by our Court. *State v. Mays*, 677 S.W.2d 476 (Tenn.Cr.App.1984); *Reece v. State*, 555 S.W.2d 733 (Tenn.Cr.App.1977). However, since the trial court did not attempt to further define the term and had already given a correct charge, the defendant could not have been prejudiced in any manner. This error was harmless. T.R.A.P. 36(b); Tenn.R.Crim.P. 52(a).

Again, we advise trial judges to refrain from communicating with deliberating juries by passing notes. As Judge Scott stated in *State v. Mays:*

> The proper method of fielding questions propounded by the jury during deliberations is to recall the jury, counsel, the defendant(s), and the court reporter back into open court and to take the matter up on the record.

677 S.W.2d at 479.

We find no reversible error. The judgment is affirmed.

JONES and REID, JJ., concur.