IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 12, 2001 Session

## STATE OF TENNESSEE v. THOMAS WAYNE SHIELDS

**Direct Appeal from the Circuit Court for Henry County**
**No. 12940      Julian P. Guinn, Judge**

---

**No. W2000-01524-CCA-R3-CD - Filed January 4, 2002**

---

The appellant, Thomas Wayne Shields, challenges both his conviction by a jury in the Circuit Court of Henry County of one count of assault and his consequent sentence. Following a thorough review of the record and the parties' briefs, we affirm the judgment of the trial court, concluding that (1) the evidence adduced at trial is sufficient to support the appellant's conviction of assault; (2) the appellant waived any objection to the trial court's response to a question posed by the jury during deliberations, and the trial court's remarks do not constitute plain error within the meaning of State v. Smith, 24 S.W.3d 274 (Tenn. 2000); and (3) the trial court properly denied the appellant full probation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOE G. RILEY, J., and CORNELIA CLARK, Sp. J., joined.

Victoria L. DiBonaventura, Paris, Tennessee, for the appellant, Thomas Wayne Shields.

Paul G. Summers, Attorney General and Reporter; Laura McMullen Ford, Assistant Attorney General; Robert "Gus" Radford, District Attorney General; and Steven L. Garrett, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

On November 2, 1999, a Henry County Grand Jury indicted the appellant for one count of aggravated assault, alleging that the appellant intentionally or knowingly and while using or displaying a deadly weapon caused Nashara Allyse Williams to reasonably fear imminent bodily injury. Tenn. Code Ann. § 39-13-102(a)(1)(B) (2001 Supp.); Tenn. Code Ann. § 39-13-101(a)(2) (1997). The indictment arose from the appellant's assault upon Williams with a knife at her Henry County home in an attempt to obtain repayment of a $150 loan that he had guaranteed. Williams, a certified nursing assistant, testified at trial that, on the morning of August 8, 1999, between 7:30 a.m. and 8:00 a.m., the appellant arrived at her trailer and began pounding on her front door, demanding repayment of the loan. Williams ultimately opened the front door and spoke with the appellant

through the screen door, asking the appellant to leave. The appellant, however, opened the screen door and entered the trailer. When Williams attempted to call the police, the appellant seized the telephone and threw it onto the floor. He then pushed Williams onto a couch, "got on top of [her]," held a knife to her throat, and threatened to kill her. The victim noted that the appellant had on three prior occasions visited her workplace and threatened to "run [her] over" or otherwise "hurt" her if she did not repay the loan. Teandrea Nicole Williams and Melissa Ann Snow, friends of the victim, witnessed the assault in this case and confirmed the victim's account. Teandrea Williams also acknowledged her report to police that the assault occurred at approximately 7:45 a.m. All three women testified that, following the assault, the appellant drove away from the trailer in a green Mercedes-Benz.

Bryan Hall, a deputy sheriff with the Henry County Sheriff's Department, testified at trial that he was dispatched to the victim's trailer at approximately 7:53 a.m. on August 8, 1999. At the trailer, he discovered three women, including the victim, who appeared to be "pretty shaken, upset." Hall also noticed that a table had been pushed onto its side, and the telephone was lying on the floor. After interviewing the three women, Hall drove to the appellant's residence. Hall noted that, depending upon the chosen route, a person could drive from the victim's trailer to the appellant's residence in "seven to eight minutes" or "two or three minutes."

At the appellant's residence, Hall observed a green Mercedes-Benz parked outside. Hall placed his hand on the hood of the vehicle and discovered that, despite the cool and rainy morning, the hood was warm. The officer then knocked on the front door of the appellant's residence. When the appellant answered the door, Hall arrested him and advised him of his Miranda rights. Upon being informed of the victim's allegations, the appellant denied assaulting her, stating to Hall that he had been at home since 4:00 a.m. that morning.

The appellant testified on his own behalf at trial. He conceded that, in 1996, he had pled guilty in Mississippi to committing the offense of grand larceny. However, he again denied assaulting Williams, reiterating that he was at home on the morning of the offense and adding that he had taken medication that morning and was unable to drive. Indeed, he insisted that he would have been incapable of assaulting Williams due to a back injury that he suffered while enlisted in the United States Army. The appellant's wife, Carlene Elizabeth Shields, likewise asserted at trial that her husband was at home on the morning of August 8, 1999. According to Shields, she left home sometime after 7:00 a.m. that morning to go to work at the Henry County Nursing Home, arriving at her workplace at approximately 7:18 a.m. She called home to check on the appellant at approximately 7:45 a.m., and the appellant answered the telephone. Moreover, the appellant called her back at approximately 7:50 a.m., speaking with both her and her supervisor, Jason Browning. Browning confirmed at trial that he spoke with the appellant on the telephone at approximately 7:50 a.m. on the morning of August 8, 1999.

At the conclusion of the parties' presentation of proof, the trial court instructed the jury on both the charged offense of aggravated assault and the lesser-included offenses of reckless

endangerment and assault.[1]  The jury found the appellant guilty of assault.  Consequently, the trial court conducted a sentencing hearing on April 18, 2000.

At the sentencing hearing, both the State and the appellant simply relied upon the proof adduced at trial.  Defense counsel emphasized to the trial court the proof concerning the appellant's military career and the appellant's record of only one prior criminal conviction.[2]  The State in turn argued that the trial court should consider the appellant's use of a weapon in assaulting the victim in this case.  At the conclusion of the hearing, the trial court imposed a sentence of eleven months and twenty-nine days in the Henry County Jail.  The trial court further ordered the appellant to serve sixty days of his sentence in confinement and the remainder on unsupervised probation.  In denying the appellant full probation, the trial court observed:

> I find it very difficult to merely turn my head at something that had the potential for such danger as what you willingly and knowingly involved yourself in.  You made the election to go there, and for whatever reason it was, it was to at the very least, threaten these people.  And you did it.  And you did it very well.
>
> . . . .
>
> I suspect that you might have just had your good stroke of luck in this [case].  I wouldn't test it again, sir, because I don't think you'll ever make it.

## II.  Analysis
### A.  Sufficiency of the Evidence

In this appeal, the appellant first challenges the sufficiency of the evidence underlying his conviction of assault.  In essence, he contends that the jury's verdict of guilt of the lesser-included offense of assault was inconsistent with its verdict of acquittal of the charged offense of aggravated assault and the lesser-included offense of reckless endangerment.  The State disagrees.

We preliminarily note that in State v. Michael P. Healy, No. W1999-01510-CCA-R3-CD, 2001 WL 721077, at **3-4 (Tenn. Crim. App. at Jackson, June 26, 2001), a panel of this court

---

[1] As we subsequently note in this opinion, the jury instructions are not included in the record before this court.  Nevertheless, we are otherwise able to glean the trial court's provision of instructions on lesser-included offenses from the incomplete record.

[2] The record contains a National Crime Information Center ("NCIC") report pertaining to a "Thomas W. Shields" with the same birth date as the appellant.  The report indicates that Shields was also arrested for two counts of assault in 1983 and was ultimately convicted, possibly of lesser offenses.  The trial court did not consider the report in sentencing the appellant.  Moreover, we note that, although reliable hearsay is admissible in sentencing hearings, Tenn. Code Ann. § 40-35-209(b) (1997), our supreme court has described NCIC reports as "pure hearsay, of a dubious degree of accuracy, prepared for purposes other than court use, contain[ing] information that is likely to be prejudicial under all circumstances and . . . not the best evidence of matters that can be proven by reliable, documentary evidence." State v. Buck, 670 S.W.2d 600, 607 (Tenn. 1984).

-3-

held that, under the test set forth by our supreme court in State v. Burns, 6 S.W.3d 453, 466-467 (Tenn. 1999), reckless endangerment is not a lesser-included offense of aggravated assault by causing another to fear imminent bodily injury while using or displaying a deadly weapon. See also State v. Larry Mitchel Watson, No. E2000-01923-CCA-R3-CD, 2001 WL 1035173, at \*\*2-3 (Tenn. Crim. App. at Knoxville, September 11, 2001). In Healy, No. W1999-01510-CCA-R3-CD, 2001 WL 721077, at \*\*3-4, we adopted the following reasoning expressed by Judge Tipton in his dissenting opinion in State v. Ralph Dewayne Moore, No. E1999-02743-CCA-R3-CD, 2000 WL 1612705, at \*4 (Tenn. Crim. App. at Knoxville, October 30, 2000), perm. to appeal granted, (Tenn. 2001), a case in which the defendant was convicted of felony reckless endangerment pursuant to an indictment charging him with aggravated assault by causing another to fear imminent bodily injury while using or displaying a deadly weapon:

> [Aggravated assault] has a result-of-conduct aspect in that it focuses on the victim being placed in fear of imminent bodily injury. . . . On the other hand, felony reckless endangerment is defined as engaging in conduct . . . which places or may place another person in imminent danger of death or serious bodily injury. Tenn. Code Ann. § 39-13-103 [(1997)]. It focuses - by its terms - upon the conduct that causes a risk of harm, not the harm itself. Those within the zone of danger need not even be aware that the threat exists. . . . Thus, one may commit the offense of aggravated assault by causing fear of bodily injury while using or displaying a weapon without committing the offense of felony reckless endangerment. Likewise, one may commit the offense of felony reckless endangerment without committing the offense of aggravated assault by causing fear. In other words, neither offense covers the range of conduct or result of the other. This means that neither offense is included in the other.

See also Watson, No. E2000-01923-CCA-R3-CD, 2001 WL 1035173, at \*\*2-3. We further noted in Healy, No. W1999-01510-CCA-R3-CD, 2001 WL 721077, at \*4, that not only are the elements of reckless endangerment not included in the elements of aggravated assault but also the differing elements of reckless endangerment do not establish a mental state indicating a lesser kind of culpability nor do they establish a less serious harm or risk of harm. Burns, 6 S.W.3d at 466-467. We are persuaded both by Judge Tipton and by our opinions in Healy and Watson. Accordingly, we conclude that the jury should not have been afforded an opportunity in this case to find the appellant guilty of reckless endangerment.[3]

In contrast, because assault is itself an essential element of aggravated assault, the former satisfies the Burns test. Watson, No. E2000-01923-CCA-R3-CD, 2001 WL 1035173, at \*3 n.7; Healy, No. W1999-01510-CCA-R3-CD, 2001 WL 721077, at \*2; cf. State v. Smiley, 38 S.W.3d 521, 524 (Tenn. 2001). Notably, however, neither the main jury instructions nor the verdict form are

---

[3]Defense counsel approved the trial court's jury instructions in this case. However, in State v. Stokes, 24 S.W.3d 303, 306 (Tenn. 2000), our supreme court held that "a defendant's acquiescence to a jury instruction based on an incorrect belief that an offense is a lesser included offense is simply insufficient to transform an erroneous jury instruction into a valid amendment of an indictment by that defendant's consent."

included in the record in this case. Accordingly, it is unclear whether the trial court instructed the jury on all three means of assault set forth in Tenn. Code Ann. § 39-13-101. Nevertheless, on the basis of the record before us, we can assume with some confidence that the jury returned a verdict of guilt of assault as defined in subsection (a)(2) of Tenn. Code Ann. § 39-13-101, i.e., assault by intentionally or knowingly causing another to reasonably fear imminent bodily injury.[4] First, the record contains no evidence of bodily injury that reasonable minds could accept. Tenn. Code Ann. § 39-13-101(a)(1); cf. Smiley, 38 S.W.3d at 525. Second, the judgment of conviction and the appellant's sentence clearly reflect the appellant's conviction of a class A misdemeanor, precluding the appellant's conviction pursuant to subsection (a)(3) of Tenn. Code Ann. § 39-13-101. See Tenn. Code Ann. § 39-13-101(b).

We now turn to the appellant's contention that the jury's verdict of guilt of the offense of assault was inconsistent with its verdict of acquittal of the offense of aggravated assault. "We will not 'upset a seemingly inconsistent verdict by speculating as to the jury's reasoning if we are satisfied that the evidence establishes guilt of the offense upon which the conviction was returned.'" State v. Timothy Clark Newson, No. E2001-00974-CCA-R3-CD, 2001 WL 1194208, at *3 (Tenn. Crim. App. at Knoxville, October 10, 2001)(addressing a jury's return of verdicts on a multi-count indictment)(quoting Wiggins v. State, 498 S.W.2d 92, 94 (Tenn.1973)); see also State v. Milton Anthony Kafoglis, Nos. 03C01-9504-CR-00128 & 03C01-9504-CR-00129, 1997 WL 21365, at *3 (Tenn. Crim. App. at Knoxville, January 21, 1997)(applying the same reasoning to inconsistent verdicts "on the offense charged in the indictment and its lesser-included offenses for which a defendant may be found guilty under the indictment"). The trial in this case amounted to a classic "swearing contest," in which credibility became the central question for determination. Questions concerning the credibility of witnesses, like all other factual issues, are resolved by the trier of fact and not this court. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990). This court will only intrude upon the province of the trier of fact and disturb its assessment of a witness' credibility in the rarest of cases. See State v. Lee Roy Gass, No. E2000-00810-CCA-R3-CD, 2001 WL 767011, at **7-8 (Tenn. Crim. App. at Knoxville, July 3, 2001). Suffice it to say that this is not one of the rarest of cases. Rather, a "rational trier of fact" could have found beyond a reasonable doubt the essential elements of assault contained in subsection (a)(2) of Tenn. Code Ann. § 39-13-101. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn.1982); Tenn. R. App. P. 13(e). This issue is without merit.

## B. Trial Court's Response to Question Posed by the Jury During Deliberations

The appellant next contends that the trial court violated Article VI, Section 9 of the Tennessee Constitution in responding to a question posed by the jury during deliberations. The State retorts that the appellant has waived any objection to the trial court's remarks by failing to proffer a timely objection. Tenn. R. App. P. 36(a). Alternately, the State apparently concedes error but contends that the trial court's remarks did not affect the judgment or prejudice the judicial process. Tenn. R. App. P. 36(b).

---

[4] Any detriment resulting from the incomplete state of the record must be borne by the appellant. Tenn. R. App. P. 24(b).

The record reflects that, during the course of the jury's deliberations, it submitted several questions to the trial court. On each occasion, the trial court "recall[ed] the jury, counsel, the defendant[], and the court reporter back into open court . . . to take the matter up on the record." State v. Mays, 677 S.W.2d 476, 479 (Tenn. Crim. App. 1984); see also State v. Chesley Randell Thompson, No. 03C01-9807-CC-00238, 1999 WL 160961, at *9 (Tenn. Crim. App. at Knoxville, March 24, 1999). On the third and final occasion, the following exchange ensued between the trial court and members of the jury:

The Court:    Alright, you asked a question about the lesser charge. You only consider the lesser charges if you find him not guilty of the first charge, as the instructions, the lead-out, says.

Mr. Kennon:    Yes, sir. But then you get to the second charging, you can't agree.

Juror:    But you can on the third charge.

Mr. Kennon:    But you can on the third charge. We don't know what to do.

The Court:    Well, I would suggest to you that perhaps you ought to give some consideration to saying that you have found him not guilty as to the second charge. But you have considered and found him guilty of the third charge. You know, an inability to reach a verdict as to the one charge is the same as a mistrial. Either that or I miss try[sic] it and we come back another day with another jury and try it again.

Mr. Kennon:    Is that a for sure thing? The fact that that would be the situation?

The Court:    You mean another trial? There's nothing that's sure. Ah, I commonly, when encountering mistrials, and it doesn't happen that often, insist that it be retried. But that should not enter your thinking here today. What should enter your thinking here today is simply and solely, "did they prove this charge beyond a reasonable doubt?" Yes or no. They either did, in which event he's guilty, or if they didn't, he's not guilty.

Don't let me get much further into it, because I think I'm trying to usurp your duties here.

Take your jury back there for - - see if you can come to an agreement.

The record suggests, as indicated below, and the parties do not appear to dispute that the "first charge" comprised the offense of aggravated assault; the "second charge" comprised the offense of reckless endangerment; and the "third charge" comprised the offense of assault.

Following the above exchange, the jury retired to continue its deliberations, and the trial court inquired if either the State or defense counsel wished to say "[a]nything for the record." Both the prosecutor and defense counsel declined to proffer any objection, whereupon the trial court remarked:

> Alright, say they have found your man not guilty of aggravated assault. They're unable to arrive at a verdict as to reckless endangerment, but they have found him guilty of assault.
>
> Now the question is, is whether the additional remarks the court made were such as to find . . . force or coerce a not guilty verdict as to reckless endangerment. We'll see what they do. Give them a few minutes.
>
> You've got one of those rare juries that just simply have not read the instructions, and they've been unable to understand them, not that they are the simplest things in the world to understand. I'm aware of that. Alright, we'll stand in recess until the jury reports.

Five minutes following its exchange with the trial court, the jury returned a verdict of guilt of assault.

Article I, Section 6 of the Tennessee Constitution affords a criminally accused the right to trial by jury. "[T]his right dictates that all issues of fact be tried and determined by twelve jurors," State v. Garrison, 40 S.W.3d 426, 432 (Tenn. 2000), including whether a defendant is guilty of a lesser-included offense, State v. Ely, 48 S.W.3d 710, 727 (Tenn.), cert. denied, __ U.S. __, 122 S. Ct. 408 (2001). Correspondingly, as noted by the appellant, Article VI, Section 9 of the Tennessee Constitution provides that "[t]he Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law." See also State v. Odom, 928 S.W.2d 18, 32 (Tenn. 1996); State v. Suttles, 767 S.W.2d 403, 406-407 (Tenn. 1989); State v. Brown, 823 S.W.2d 576, 588 (Tenn. Crim. App. 1991). "Any undue intrusion by the trial judge into th[e] exclusive province of the jury, is an error of the first magnitude." Kersey v. State, 525 S.W.2d 139, 144 (Tenn. 1975).

Consistent with the constitutional division of labor between the trial court and the jury, a trial court has the authority to provide supplemental instructions when the jury poses a question during deliberations indicating its confusion regarding a question of law. State v. Forbes, 918 S.W.2d 431, 451 (Tenn. Crim. App. 1995); cf. Tenn. R. Crim. P. 30(c). However, in Kersey, 525 S.W.2d at 144-145, our supreme court strictly circumscribed the procedures, including the requisite supplemental instruction, to which a trial court must adhere when the jury communicates to the court its inability to reach a verdict. In so doing, our supreme court specifically rejected any supplemental instruction that encourages a member of the jury to change his or her opinion for the purpose of obtaining unanimity and avoiding a mistrial. Id. at 144. In this regard, the court cited with approval the following observation by Judge Brown in his dissenting opinion in Huffman v. United States, 297 F.2d 754, 759 (5th Cir. 1962): "[A] mistrial from a hung jury is a safeguard to liberty. In many areas it is the sole means by which one or a few may stand out against an overwhelming contemporary public sentiment. Nothing should interfere with its exercise." Kersey, 525 S.W.2d at 143.

In applying the above principles to the instant case, we preliminarily note our agreement with the State that defense counsel failed to preserve this issue for appeal by neglecting to object to the trial court's response to the jury's question, even when invited to do so by the court. As a general rule, "[a] party cannot witness misconduct on the part of the court, await the result of the verdict, and then, if it is against him or her, object to the alleged misconduct." State v. Tune, 872 S.W.2d 922, 930 (Tenn. Crim. App. 1993); Tenn. R. App. P. 36(a); see also State v. McPherson, 882 S.W.2d 365, 373 (Tenn. Crim. App. 1994); cf. State v. Mounce, 859 S.W.2d 319, 323 (Tenn. 1993); State v. Adkisson, 899 S.W.2d 626, 634-636 (Tenn. Crim. App. 1994). Accordingly, the appellant has waived this issue absent a finding of plain error. Tenn. R. Crim. P. 52(b).

In State v. Smith, 24 S.W.3d 274, 282-283 (Tenn. 2000), our supreme court formally adopted the plain error analysis set forth in Adkisson, 899 S.W.2d at 641-642. Specifically, the court approved the consideration of the following five factors in determining

> whether an error constitutes "plain error" in the absence of an objection at trial: "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'"

Smith, 24 S.W.3d at 282 (quoting Adkisson, 899 S.W.2d at 641-642). The court emphasized that the presence of all five factors must be established by the record, and "complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." Id. at 283.

The appellant's principal contention on appeal is that, when the jury stated its failure to agree with respect to the offense of reckless endangerment and its "agreement" with respect to the offense of assault, "[t]he Judge assumed[, possibly erroneously, that the jury] had decided on . . . guilty as to assault," and the judge's supplemental instruction reflected this assumption to the detriment of the appellant. In other words, the appellant argues that the jury may have acquitted the appellant of all offenses if the trial court had not responded to the jury's inquiry by suggesting that it "ought to give some consideration to saying that you have found him not guilty as to the second charge. But you have considered and found him guilty of the third charge." In this regard, we must conclude that the record does not clearly establish what occurred in the trial court. First, as noted previously, the appellant has failed to include in the record before this court the main jury instructions. Tenn. R. App. P. 24(b). The absence of the main jury instructions from the record prevents this court from reviewing the exchange between the trial court and the jury in its full context. Second and more importantly, upon returning to open court to respond to the jury's third and final question, the trial judge did not disclose the precise content of the jury's communication, and defense counsel at no time requested any clarification. Accordingly, it is plausible that in remarking to the jury that "you have considered and found [the appellant] guilty of the third charge" the judge was merely reiterating the jury's communication to him prior to his return to open court.

Indeed, the record before this court more strongly suggests that the jury's confusion stemmed from the trial court's inclusion in the main instructions of the rule requiring that a jury unanimously agree to acquit a defendant of a greater offense before considering a defendant's guilt of a lesser offense. McPherson, 882 S.W.2d at 375-376. In other words, the record suggests that the jury was essentially reporting to the trial court its inability to reach a unanimous verdict for the offense of reckless endangerment and inquiring whether it could, nevertheless, return a verdict of guilt for the offense of assault. The trial court essentially responded that the jury's inability to reach a verdict for the offense of reckless endangerment would result in a mistrial and suggested that members of the jury who believed the appellant to be guilty of reckless endangerment change their minds in order to avoid a mistrial. The trial court's suggestion was clearly error under Kersey, 525 S.W.2d at 144. Indeed, it is apparent from the record that the court immediately recognized its mistake and attempted to provide a curative instruction, emphasizing to the jury that the possibility of a mistrial was irrelevant to its consideration of whether the State had satisfied its burden of proving the appellant's guilt of reckless endangerment.

Notwithstanding the trial court's Kersey violation, we conclude that the appellant has failed to establish either an adverse affect to a substantial right or the necessity of considering the trial court's error in order to do substantial justice. Smith, 24 S.W.3d at 282. The sole prejudice possibly occasioned by the trial court's error was the jury's failure to deadlock on the issue of the appellant's guilt or innocence of reckless endangerment. Yet, as already noted, the appellant was not entitled to an instruction on the offense of reckless endangerment. Accordingly, we are not inclined to reverse the appellant's conviction of assault on the basis of plain error. This issue is without merit.

## C. Sentencing

Finally, the appellant contends that the trial court erred in denying him full probation. The appellant primarily asserts that the trial court's failure to place findings on the record relating to its consideration of sentencing principles entitles him to relief. The State responds that the "potentially dangerous" nature of the appellant's conduct warranted a sentence of split confinement.

This court reviews the manner of service of sentences de novo with a presumption that the determinations made by the trial court are correct. Tenn. Code. Ann. § 40-35-401(d) (1997). Generally, the presumption is conditioned upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). However, "the trial court has more flexibility in misdemeanor sentencing than in felony sentencing." State v. Richard Wools, No. W2000-01979-CCA-R3-CD, 2001 WL 935466, at *3 (Tenn. Crim. App. at Jackson, August 16, 2001). Thus, in the context of misdemeanor sentencing, a trial court's failure to place specific findings on the record will not vitiate the presumption of correctness. State v. Troutman, 979 S.W.2d 271, 273-274 (Tenn. 1998); see also State v. Marvin W. Hill, Jr., No. E2000-02789-CCA-R3-CD, 2001 WL 1105303, at *2 (Tenn. Crim. App. at Knoxville, September 21, 2001)("Because this case involves misdemeanor sentencing rather than felony sentencing, a lack of findings by the trial court is no basis for holding the trial court in error."). In any event, the burden is upon the appellant to demonstrate to this court the impropriety of his sentence. State v. Grigsby, 957 S.W.2d 541, 544 (Tenn. Crim. App. 1997); State v. Loden, 920 S.W.2d 261, 266 (Tenn. Crim. App. 1995).

A trial court has the authority to place a misdemeanant on probation either immediately after sentencing or after service of a portion of the sentence in confinement. Tenn. Code Ann. § 40-35-302(e) (1997). As on appeal, a defendant bears the burden in the trial court of demonstrating that total probation, rather than split confinement, will "'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Hooper, 29 S.W.3d 1 (Tenn. 2000). In determining whether a defendant has satisfied his burden, the trial court considers the following factors: the nature and circumstances of the criminal conduct, Tenn. Code Ann. § 40-35-210(b)(4) (1997); the defendant's potential or lack of potential for rehabilitation, Tenn. Code Ann. § 40-35-103(5) (1997); whether a sentence of total probation would unduly depreciate the seriousness of the offense, Tenn. Code Ann. § 40-35-103(1)(B); and whether a sentence other than total probation would provide an effective deterrent to others likely to commit similar crimes, Tenn. Code Ann. § 40-35-103(1)(B). State v. Grissom, 956 S.W.2d 514, 520 (Tenn. Crim. App. 1997); Bingham, 910 S.W.2d at 456. A defendant's potential or lack of potential for rehabilitation may, in turn, be demonstrated by circumstances such as his criminal record, his social history and present condition, and his candor before the court. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). Moreover, a defendant's willingness to accept responsibility for his crime is a circumstance germane to his rehabilitation potential. State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996).

The trial court clearly based its denial of full probation upon the circumstances or the seriousness of the appellant's offense. The general rule is that "[i]n order to deny an alternative sentence based on the seriousness of the offense, 'the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring a sentence other than confinement." Bingham, 910 S.W.2d at 454. That having been said, circumstances that do not rise to the level required to justify a denial of any alternative sentence may nevertheless justify a denial of full probation. Id. at 456; see also State v. William D. Ware, No. 01C01-9803-CC-00129, 1999 WL 378341, at *9 (Tenn. Crim. App. at Nashville, June 11, 1999).

The trial court in this case emphasized the "potential for . . . danger" created by the appellant's behavior. Although the trial court did not make a specific finding concerning the appellant's use of a weapon during the commission of this offense, such a finding was implicit in the trial court's remarks, Tenn. Code Ann. § 40-35-114(9) (1997), as was a finding concerning the consequent potential for bodily injury to the victim and, indeed, the risk to human life, Tenn. Code Ann. § 40-35-114(10) & (16). See State v. William Butler Bolling, No. E2000-03166-CCA-R3-CD, 2001 WL 965099, *3 (Tenn. Crim. App. at Knoxville, August 16, 2001)(holding that the enhancement and mitigating factors are relevant to the trial court's manner-of-service determination); State v. Claude Ronnie Morrison, No. E2000-02048-CCA-R3-CD, 2001 WL 881382, *3 (Tenn. Crim. App. at Knoxville, August 7, 2001)(holding that enhancement and mitigating factors are appropriate considerations in determining manner of service as well as length of sentence). None of these factors are inherent in the offense of assault by intentionally or knowingly causing another to reasonably *fear* imminent bodily injury. Indeed, the appellant's guilt of assault in this case was established by the victim's testimony that the appellant had threatened her with bodily harm on three prior occasions, that the appellant entered her apartment without permission on the occasion of this

offense, that the appellant forcibly prevented her from calling the police, and that the appellant pushed her onto a couch, "got on top of [her]," and threatened to kill her. In contrast, the appellant's use of a weapon and the attendant "potential for . . . danger" was established by testimony that the appellant held a knife to the victim's throat. Cf. State v. Lavender, 967 S.W.2d 803, 807-808 (Tenn. 1998).

Of course, the jury in this case acquitted the appellant of aggravated assault. Nevertheless, in State v. Winfield, 23 S.W.3d 279, 283 (Tenn. 2000), our supreme court held that a court "may apply an enhancement factor based on facts underlying an offense for which the defendant has been acquitted, so long as the facts have been established in the record by a preponderance of the evidence." Moreover, even prior to our supreme court's decision in Winfield, this court had held that "[c]onsideration of leniency in . . . the verdict . . . [is a] proper consideration[] for finding confinement necessary under Tenn. Code Ann. § 40-35-103(1)(B)." State v. Michael Buell, No. 01C01-9607-CC-00292, 1997 WL 677947, at *4 (Tenn. Crim. App. at Nashville, November 3, 1997); see also State v. David Carl Orr, No. W1998-00010-CCA-R3-CD, 2000 WL 674584, at *5 (Tenn. Crim. App. at Jackson, May 19, 2000); State v. Samuel D. Braden, No. 01C01-9610-CC-00457, 1998 WL 85285, at *8 (Tenn. Crim. App. at Nashville, February 18, 1998). In contrast to the circumstances of Winfield, 23 S.W.2d at 284, the record in this case contains little conflicting evidence concerning the appellant's use of a weapon. See also State v. Lewis, 44 S.W.3d 501, 508 (Tenn. 2001). Rather, the bulk of the conflicting evidence concerned the appellant's commission of any assault whatsoever, a dispute resolved by the jury's verdict.

In any event, "[a]lthough the defendant was never specifically asked, he never accepted responsibility or expressed remorse concerning the present offense." Wools, No. W2000-01979-CCA-R3-CD, 2001 WL 935466, at *4. A defendant's failure to acknowledge culpability for his actions is not only germane to his rehabilitation potential, Zeolia, 928 S.W.2d at 463, but also may support a finding that a sentence of confinement is necessary to avoid depreciating the seriousness of an offense, State v. Gutierrez, 5 S.W.3d 641, 647 (Tenn. 1999). In short, notwithstanding any mitigating effect of the appellant's military service and his record of a single prior conviction, we decline to disturb the trial court's denial of full probation.

### III. Conclusion
For the foregoing reasons, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE